IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER ABERNATHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 16 CV 2128 |
| | ) | |
| The VILLAGE OF PARK FOREST, Illinois, | ) | Judge DOW |
| a municipal corporation, former Park Forest | ) | |
| police officers, CARL KUESTER and | ) | Magistrate Judge GILBERT |
| DONALD MEYERS, COOK COUNTY, | ) | |
| Illinois, Assistant State's Attorney PAUL PERRY, | ) | |
| JAMES L. JORDAN, STEVEN THEODORE, | ) | |
| and THEODORE POLYGRAPH SERVICE, | ) | |
| INC., an Illinois corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff CHRISTOPHER ABERNATHY, by and through his attorneys, Damon Cheronis of the Law Office of Damon Cheronis, and Torreya L. Hamilton of the Hamilton Law Office, LLC, make the following second amended complaint against Defendants The VILLAGE OF PARK FOREST, Illinois, former Park Forest police officers, CARL KUESTER and DONALD MEYERS, (Defendant OFFICERS), COOK COUNTY, Illinois, and Assistant State's Attorney PAUL PERRY and JAMES L. JORDAN, polygraph examiner STEVEN THEODORE, and THEODORE POLYGRAPH SERVICE, INC.:

### INTRODUCTION

1. Plaintiff CHRISTOPHER ABERNATHY spent more than 29 years in prison for a crime he did not commit. ABERNATHY was wrongfully convicted of the brutal sexual assault and murder of a 15-year-old girl named Kristina Hickey.

2. ABERNATHY did not kill Hickey and there was not one piece of physical evidence connecting him to her murder.

3. The evidence used to convict ABERNATHY of Hickey's murder was his false confession, concocted and coerced by Defendants over the course of approximately 36 hours of interrogation.

4. Based on his false confession, in 1987, ABERNATHY was wrongfully convicted of this heinous crime and sentenced to natural life in prison.

5. Twenty-seven years later, in 2014, the Cook County State's Attorney re-opened an investigation into the Hickey murder, and re-examined ABERNATHY's conviction. DNA testing was conducted on every available piece of evidence collected during the Hickey murder investigation and was compared to a sample of ABERNATHY's DNA. Witnesses were located and re-interviewed. At the conclusion of her investigation in 2015, former Cook County State's Attorney Anita Alvarez moved to vacate ABERNATHY's conviction and recommended his release from prison.

6. In speaking publicly about her decision, State's Attorney Alvarez stated that the DNA evidence exonerated ABERNATHY of Hickey's murder. Alvarez dismissed all charges against ABERNATHY because she could not let a "wrongful conviction" stand, and that her office had important evidence to pursue with respect to other suspects for the murder of Kristina Hickey.

7. ABERNATHY now brings this lawsuit seeking justice for the irreparable harm that he has suffered as a result of Defendants' successful efforts to frame him for a crime he did not commit.

## JURISDICTION and VENUE

8. This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and Illinois law.

9. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§1331, 1343 and 1367.

10. Venue is proper under 28 U.S.C. §1391(b). The events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

11. CHRISTOPHER ABERNATHY is now 50 years old and a resident of Lake County, Indiana.

12. At all relevant times, Defendant OFFICERS were Park Forest Police Officers employed by the Defendant VILLAGE and acting under color of law and within the scope of their employment as Park Forest Police Officers.

13. Defendant PAUL PERRY is, or was at all relevant times, an Assistant State's Attorney and prosecutor, employed by Defendant COOK COUNTY, and acting under color of law and within the scope of his employment.

14. Defendant JORDAN is deceased, but was at all relevant times, a Cook County Sheriff's Police Detective, employed by Defendant COOK COUNTY, and acting under color of law and within the scope of his employment.

15. Defendant STEVEN THEODORE is, or was at all relevant times, a professional polygraph examiner and the owner of THEODORE POLYGRAPH SERVICE, INC., in Hillside, Illinois, At all relevant times to this lawsuit, THEODORE was acting under color of law and within the scope of his employment.

16. Defendant COOK COUNTY is a local government entity in the State of Illinois. Defendant COUNTY is, or was at all relevant times, the employer and principal of Defendant PERRY and JORDAN. Should Plaintiff prevail on his claims against PERRY and/or JORDAN, Defendant COUNTY is liable to Plaintiff as the principal on Plaintiff's state law claim pursuant to the doctrine of *respondeat superior*, and must indemnify PERRY and JORDAN's estate on Plaintiff's federal claims pursuant to 735 ILCS 10/9-102.

17. Defendant VILLAGE is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is, or was at all relevant times, the employer and principal of the Defendant OFFICERS. Should Plaintiff prevail on his claims, Defendant VILLAGE is liable to Plaintiff as the principal on Plaintiff's state law claim pursuant to the doctrine of *respondeat superior*, and must indemnify Defendant OFFICERS on Plaintiff's federal claims pursuant to 735 ILCS 10/9-102.

18. At all relevant times, THEODORE POLYGRAPH SERVICE, INC. was an Illinois corporation and was Defendant THEODORE's employer. Should Plaintiff prevail on his claims against THEODORE, his CORPORATION is liable to Plaintiff as the principal on Plaintiff's state law claim pursuant to the doctrine of *respondeat superior*, and must indemnify THEODORE on Plaintiff's federal claims pursuant to 735 ILCS 10/9-102.

**The Hickey Murder Investigation**

19. On or about October 3, 1984, Hickey was brutally raped and murdered on her way home from a choir concert. Hickey's true killer or killers are presumably still at large.

20. The circumstances of the Hickey murder were particularly gruesome and it was the subject of significant media attention in the Chicago area. As a result, the Park Forest Police Department and Defendant OFFICERS were under significant pressure to solve the crime.

21. Defendant JORDAN and other Detectives from the Cook County Sherriff's police assisted Park Forest with the Hickey murder investigation.

22. During the first year of the Park Forest Police Department's investigation into the Hickey murder, ABERNATHY was not a suspect.

23. No witness placed ABERNATHY near the scene of the murder.

24. Police found no physical evidence linking ABERNATHY to Hickey's murder.

25. In the eight months following the murder, Park Forest questioned multiple other suspects.

26. At least two suspects retained attorneys who halted their interrogations.

27. More than a year after the crime, and under pressure to solve it, Defendants KUESTER and MYERS coerced a man named Alan Dennis into implicating ABERNATHY for the murder.

28. On or about November 21, 1985, Defendants KUESTER and MYERS coerced and fabricated a false third party admission statement by Dennis that ABERNATHY had admitted to killing Hickey when Dennis asked him about it.

29. ABERNATHY never made any such admission, and Dennis has since recanted his statement and his subsequent testimony. According to Dennis, Defendant OFFICERS threatened him with criminal charges if he refused to help them convict ABERNATHY.

30. On November 30, 1985, Defendant OFFICERS caused ABERNATHY to be arrested and transported to the Park Forest police station based solely on the coerced and fabricated statement by Alan Dennis.

31. Between November 30, 1985 and December 2, 1985, Defendants participated in the exertion of coercive interrogation tactics on Plaintiff in an attempt to procure his confession to the Hickey murder.

32. On information and belief, Detective JORDAN participated in the coercive interrogation of Plaintiff and/or Allen Dennis.

33. On December 1, 1985, Defendant OFFICERS transported ABERNATHY to THEODORE POLYGRAPH SERVICES, INC., in Hillside, Illinois, where Defendant THEODORE administered a polygraph examination to Abernathy.

34. Defendant THEODORE participated in the coercion of Plaintiff. THEODORE acted under color of law by cooperating and conspiring with Defendant OFFICERS to coerce Plaintiff into falsely confessing to a crime he did not commit.

35. THEODORE lied to Plaintiff and submitted false reports regarding the results and content of the polygraph examination.

36. THEODORE conspired with Defendant OFFICERS to draft false documents and reports regarding the polygraph he administered to Plaintiff and the statements Plaintiff made during and after the examination.

37. Defendant OFFICERS and Defendant THEODORE used the results of this polygraph examination to procure a false confession to the Hickey murder from ABERNATHY.

38. Abernathy was 18 years old at the time of his arrest, and he turned 19 during his interrogation.

39. ABERNATHY was a teenager of limited mental capabilities. Throughout his time in school, ABERNATHY was enrolled in special education classes. He had documented learning disabilities and had dropped out of school at age 16.

40. Defendants were aware of ABERNATHY's diminished mental capacity but ignored the risk they created of obtaining a false confession by using aggressive and coercive interrogation tactics on him, or by standing by while one or more of their fellow Defendants did so. In reckless disregard for the truth, Defendants took advantage of ABERNATHY's youth, his naiveté, his inexperience with the legal system and his diminished mental capacity in order to obtain a false confession from him.

41. During the 36 hours of interrogation, Defendant OFFICERS aggressively pressured, lied to, and coerced ABERNATHY. They provided him with suggestions on how he could have killed Hickey, urging him to adopt their words and theories, and thereby fabricating false evidence against ABERNATHY. Defendants falsely promised ABERNATHY that if he just told them what they needed to hear, he would be allowed to go home, but otherwise, he could not. Defendants interrogated ABERNATHY in this manner for hours until he ultimately agreed to sign and say anything just so that he could go home and provide Defendants with a false confession that he accidentally killed Hickey.

42. ABERNATHY's false confession does not match the physical evidence of the crime and is also devoid of significant details the true killer would have known.

43. ABERNATHY's false confession was uncorroborated by the physical evidence or by any witness testimony.

44. Once they had secured his false confession, Defendant OFFICERS and Defendant PERRY subsequently caused ABERNATHY to be charged with Hickey's rape and murder.

45. Days later, however, concerned about the weakness of the confession they had coerced from ABERNATHY, and recognizing that his confession was lacking in significant details that matched the physical evidence, Defendant OFFICERS visited ABERNATHY in Cook County jail. Defendant OFFICERS then fabricated an additional oral statement by ABERNATHY, filling in some of the missing details that would help them secure ABERNATHY's wrongful conviction for the Hickey rape and murder.

46. During ABERNATHY's subsequent criminal prosecution, Defendant KUESTER continued to create false evidence and testimony, which resulted in his wrongful conviction, by coercing and threatening witnesses to provide false testimony that would implicate ABERNATHY.

47. On January 15, 1987, ABERNATHY was convicted of the rape and murder of Kristina Hickey.

48. One month later, CHRISTOPHER ABERNATHY was sentenced to natural life in prison.

### ABERNATHY'S Exoneration and Release

49. Hickey's true killer(s) left behind DNA evidence at the scene of the crime. DNA science has revealed two distinct male DNA profiles that do not belong to ABERNATHY or the police officers who processed the crime scene.

50. ABERNATHY's DNA was not present on any piece of evidence relating to the Hickey murder.

51. On February 11, 2015, after spending nearly three decades of his life behind bars, State's Attorney Anita Alvarez moved to vacate ABERNATHY's conviction and dismissed all charges against him. ABERNATHY was released from prison that day.

52. Unfortunately, however, ABERNATHY has suffered irreparable and immeasurable harm. As a result of Defendants' misconduct, ABERNATHY suffered nearly three decades of incarceration and physical and emotional pain and suffering of such an immense nature that he will never be the same.

53. Plaintiff was physically and sexually attacked during his incarceration.

54. Plaintiff contracted the HIV virus in prison, a condition that is likely to shorten his life. Plaintiff will require costly medication and medical care for this medical condition for the rest of his life.

55. ABERNATHY's mother, with whom he was quite close before and during his incarceration, died of cancer just six months after ABERNATHY's release from prison.

56. As a result of Defendants' misconduct, ABERNATHY has suffered injuries and damages of a permanent and tragic nature.

## COUNT I
(42 U.S.C. § 1983 –Fourth Amendment False Arrest Claim)

57. Each of the foregoing paragraphs is incorporated as if fully restated here.

58. In the manner more fully described above, Defendant OFFICERS arrested Plaintiff, or caused Plaintiff to be arrested, without probable cause or any other legal justification to do so, in violation of Plaintiff's rights under the Fourth Amendment.

59. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to Plaintiff's rights, and in total disregard of the truth and of Plaintiff's innocence.

8

60. Defendants' OFFICERS' misconduct directly resulted in the unjust criminal conviction of Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

61. As a result of Defendants' misconduct described in this Count, Plaintiff damages which will be proven at trial.

**WHEREFORE,** Plaintiff prays for a judgment against Defendant OFFICERS in a fair and just amount sufficient to compensate him for his damages, plus a substantial sum in punitive damages, as well as court costs, attorneys' fees, and such other relief as is just and equitable.

**COUNT II**
(42 U.S.C. § 1983 – Fourteenth Amendment Due Process Claim)

62. Each of the foregoing paragraphs is incorporated as if fully restated here.

63. In the manner described more fully above, Defendant OFFICERS, JORDAN, PERRY, and THEODORE while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

64. In the manner described more fully above, Defendant OFFICERS and JORDAN deliberately withheld material and exculpatory evidence from Plaintiff and his attorneys, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

65. In addition, Defendants solicited false evidence, including testimony that they knew to be false, and fabricated evidence implicating Plaintiff in the crime, obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff at his criminal trial.

66. In addition, Defendants concealed and fabricated additional evidence that may not yet known to Plaintiff.

9

67. Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby violating his constitutional right to a fair trial. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

68. The misconduct described in this Count was undertaken with deliberate indifference to Plaintiff's rights, and in total disregard of the truth and of Plaintiff's actual innocence.

69. As a result of Defendants' misconduct described in this Count, Plaintiff suffered a loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

    **WHEREFORE,** Plaintiff prays for a judgment against Defendants in a fair and just amount sufficient to compensate him for his damages, plus a substantial sum in punitive damages, as well as court costs, attorneys' fees, and such other relief as is just and equitable.

### COUNT III
(42 U.S.C. § 1983 – Fifth Amendment Coerced Confession Claim)

70. Each of the foregoing paragraphs is incorporated as if fully restated here.

71. In the manner described more fully above, Defendants acting as investigators, individually, jointly, and in conspiracy with one another, coerced Plaintiff into incriminating himself falsely, in violation of his rights as secured by the Fifth Amendment.

72. As described more fully above, Defendants participated in an unconstitutional, multi-day interrogation of Plaintiff, which caused Plaintiff to make involuntary false statements implicating himself in the rape and murder of Kristina Hickey.

73. These false statements were used against Plaintiff to his extreme detriment in a criminal case.

74. These statements were the reason that Plaintiff was prosecuted and convicted of the Hickey murder.

75. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to Plaintiff's constitutional rights, and in total disregard of the truth and of Plaintiff's clear innocence.

76. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

**WHEREFORE,** Plaintiff prays for a judgment against Defendants in a fair and just amount sufficient to compensate him for his damages, plus a substantial sum in punitive damages, as well as court costs, attorneys' fees, and such other relief as is just and equitable.

## COUNT IV
(42 U.S.C. § 1983 – Fourth Amendment Unlawful Detention Claim)

77. Each of the foregoing paragraphs is incorporated as if fully restated here.

78. In the manner described above, Defendant OFFICERS and Defendant PERRY, in conspiracy with one another, fabricated evidence and testimony regarding the circumstances that led to Plaintiff's arrest.

79. In so doing, Defendant OFFICERS and Defendant PERRY caused Plaintiff to be subjected to pretrial detention unsupported by probable cause, in violation of Plaintiff's rights as secured by the Fourth Amendment.

80. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally or with reckless indifference to Plaintiff's constitutional rights.

81. As a result of Defendants' misconduct described in this Count, Plaintiff suffered a loss of liberty, pecuniary and emotional damages.

**WHEREFORE,** Plaintiff prays for a judgment against Defendant OFFICERS and Defendant PERRY in a fair and just amount sufficient to compensate him for his damages, plus punitive damages, as well as court costs, attorneys' fees, and such other relief as is just and equitable.

## COUNT V
(42 U.S.C. § 1983 Failure to Intervene)

82. Each of the foregoing paragraphs is incorporated as if fully restated here.

83. One or more of Defendants was aware of his fellow Defendants' misconduct and had a reasonable opportunity to intervene to prevent harm to Plaintiff, but failed to do so.

84. As a result of Defendants' failure to intervene, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**WHEREFORE,** Plaintiff prays for a judgment against Defendant OFFICERS, JORDAN, and PERRY, in a fair and just amount sufficient to compensate him for his damages, plus a substantial sum in punitive damages, as well as court costs, attorneys' fees, and such other relief as is just and equitable.

## COUNT VI
(Illinois Malicious Prosecution Claim)

85. Each of the foregoing paragraphs is incorporated as if fully restated here.

86. In the manner described above, Defendant OFFICERS and Defendant PERRY acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

87. In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there were no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

88. The misconduct described in this Count was undertaken intentionally, with malice, with reckless indifference to Plaintiff's rights, and in total disregard of the truth and of Plaintiff's innocence.

89. The criminal proceedings against Plaintiff were terminated in his favor, in a manner indicative of innocence.

90. As a result of Defendants' misconduct described in this Count, Plaintiff suffered a 29-year loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

**WHEREFORE,** Plaintiff prays for a judgment against Defendants in a fair and just amount sufficient to compensate him for his damages and such other relief as is just and equitable.

### COUNT VII
(42 U.S.C. § 1983 - Conspiracy to Deprive Constitutional Rights)

91. Each of the preceding paragraphs is incorporated as if fully restated here.

92. As described more fully above, Defendant OFFICERS, JORDAN, PERRY, and THEODORE reached an express or implied agreement to violate Plaintiff's constitutional rights as described in the preceding paragraphs.

93. One or more of the individual Defendants further conspired to cover up their own, and each others' misconduct with respect to Plaintiff.

94. In furtherance of the conspiracy, each of the co-conspirators committed overt acts or omissions and was an otherwise willful participant in joint activity.

95. The misconduct described in this Count was undertaken with willfulness or reckless indifference to the rights of Plaintiff.

96. As a result of Defendant OFFICERS, JORDAN, PERRY, and THEODORE's acts or

omissions, Plaintiff suffered more than 29-years of imprisonment for a crime he did not commit, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

**WHEREFORE,** Plaintiff prays for a judgment against Defendant OFFICERS, JORDAN, PERRY, and THEODORE in a fair and just amount sufficient to compensate him for his damages, plus a substantial sum in punitive damages, as well as court costs, attorneys' fees, and such other relief as is just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

CHRISTOPHER ABERNATHY, Plaintiff

By: /s Torreya L. Hamilton
    One of Plaintiffs' Attorneys

HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452
Chicago, Illinois 60604
312.726.3173
tlh@thehamiltonlawoffice.com
Atty. No. 6229397

By: /s Damon Cheronis
    One of Plaintiffs' Attorneys

LAW OFFICES OF DAMON CHERONIS
53 West Jackson Boulevard, Suite 1750
Chicago, Illinois 60604
312.663.4644